JOURNAL ENTRY AND OPINION
Defendant-appellant Todd Gardner appeals from his conviction for felonious assault (R.C. 2903.11) following a bench trial. Defendant contends the evidence was insufficient to sustain the conviction and that his conviction was against the manifest weight of the evidence.
Defendant lived in the upper unit of a duplex located on East 118th Street in Cleveland with his wife Yovette Gardner and children. The victim, Charles Green, dated Tracy Emerson, who rented the downstairs unit from the Gardners. Charles Green often visited Ms. Emerson and her children at their home and spent the night.
The victim, Charles Green, testified that on July 9, 1998, he went to Emerson's house in the early evening to drop off a box of items for the children. Ms. Emerson was not at home, but had given Charles Green a key to the house. She had previously asked Green to speak to defendant about fixing her broken door handle because her children were getting their hands caught in it. As Green parked his truck, he noticed defendant in the front yard working on a tree with Harvey Green, a neighbor, who is no relation to the victim.
Charles Green approached defendant carrying a large box filled with t-shirts, hats, toys, tools and a large floor fan. He asked defendant when he was going to fix the door handle. Defendant stated that Emerson should have moved out by then and told Green he had no right to ask about the door because he did not live at the house. Green, still holding the box, indicated to defendant that he did not have to speak to him in that manner.
Green, who was left handed, had crushed his left hand in a machine in 1977 and lost the use of his remaining fingers after repeated surgeries. His left hand began to hurt from holding the heavy box and he bent over to put the box down. Defendant was standing in front of Green and Harvey Green was standing next to defendant. Green recalled being hit in the left side of the face as he bent over and then lost consciousness.
When Charles Green regained consciousness, he was helped into the house by some children. People were screaming that his eye was falling out, and he tried to hold his right eye up with his hand. Green went into the bathroom, saw that his right eye was hanging from the socket and tried to put it back in.
Green sat on the couch as the police arrived. He had purchased some crack cocaine earlier in the day because he was depressed, and he attempted to place it in the cushions of the couch. Green recalled being helped from the couch and taken to the hospital by EMS. After undergoing surgery, Charles Green learned that he had lost his right eye. At the time of trial, he continued to suffer from dizziness, impaired vision in his remaining eye and loss of motion in his left elbow due to a fracture incurred during the assault.
The neighbor, Harvey Green, testified that he had known defendant, his next door neighbor, for eight to ten years, thought very highly of him and considered him to be a friend. Prior to the date of the assault, Harvey Green had met Charles Green in passing and occasionally had casual conversations with him.
On July 9, 1998, Harvey Green was helping defendant trim a tree on their property line. After the men had finished trimming the tree, Charles Green walked up carrying an armload of items. Charles Green, in a calm voice, asked defendant about fixing the doorknob. Defendant became argumentative, stating that he would not make the repair and stepped closer to Charles Green. Harvey Green stated that Charles Green responded that defendant did not have to get in his face, and loudly told defendant that he would make him fix the door. Harvey Green then stepped away because he was not sure whether Green was armed.
According to Harvey Green, defendant asked Charles Green whether he wanted to fight. As Green bent over to put his box down, defendant punched Green in the head with a closed fist, knocking him to the ground. Defendant punched Green three more times as he lay on the ground, and then began to kick him repeatedly in the back of the head and back.
In the course of the attack, defendant pushed Charles Green's body across the driveway and up to a fire hydrant. Defendant then took Green's head in his hands and began to beat it against the fire hydrant. Upon seeing this, Harvey Green asked defendant:
 What are you trying to do? Are you trying to kill him? Harvey Green grabbed defendant, attempting to pull him away from Charles Green, but defendant threw him off. According to Harvey Green, defendant told him he was making sure that Green would not be able to get up and shoot him in the back. At one point, defendant grabbed a portable phone that was on top of the things that Charles Green had been carrying and threw it at the victim. According to Harvey Green, during the entire assault, Charles Green never hit, attempted to hit or threatened defendant. He never saw Charles Green reach for a gun or say that he had a gun on him.
After beating Charles Green, defendant went into his house. Harvey Green helped Charles Green up from the ground, and gathered his belongings. Harvey Green stated that Charles Green was holding his eye, which was hanging out on a stem, in his hand, trying to push it back in.
According to Harvey Green, some time after the assault, defendant distributed a letter to his neighbors, asking for their assistance in securing the arrest of Charles Green for alleged drug trafficking. After distributing the letter, defendant also complained to Harvey Green about the victim's alleged activities. Harvey Green testified that he had never had problems with Charles Green, had seen no indication of drug trafficking at Emerson's home, and did not recall defendant making these allegations prior to the assault.
Officer Gregory Ramser of the Cleveland Police Department testified that on July 9, 1998, he and his partner, Officer Dlugolinski, responded to a radio broadcast of a fight at defendant's home. Officer Ramser questioned defendant about the incident and defendant stated that he had a confrontation with his tenant regarding a missing doorknob and rent money. Defendant stated that he was throwing the tenant out because he owed defendant money and they had a verbal altercation. Defendant indicated that he felt threatened, so he punched the tenant in the face. Defendant never stated that he feared that Charles Green was armed.
Officer Ramser found Charles Green in his apartment, holding a towel over his eye. When he observed Green's eye hanging from the socket, he called EMS. Ramser also confiscated a small quantity of suspected cocaine from the couch where Green had been sitting. Green was named as a suspect for drug possession, but was not arrested because of his serious injuries.
Det. Michael Quinn testified that he was assigned to follow up on the arrest of defendant for felonious assault upon Charles Green. Det. Quinn interviewed and photographed Charles Green both at the hospital and after he was released.
Det. Quinn stated that he also sent the uniformed officers back to the crime scene to determine the identity of an anonymous witness referred to in the police report, and learned that this witness was Harvey Green, the neighbor. When Det. Quinn attempted to schedule an appointment with Harvey Green, Harvey Green stated that he did not want to get involved because he was friendly with the people next door. He eventually consented to being interviewed over the phone.
Defendant presented the testimony of three witnesses. Terrance Fair testified that he had known defendant for twenty years, considered defendant to be his best friend, thought very highly of him and had never seen him argue.
Yovette Gardner, defendant's wife, testified that she rented the downstairs unit of her duplex to Tracy Emerson. Yovette had asked Emerson to move out, and had a strained relationship with her. She stated that she had sole control over the premises and defendant was to check with her before doing anything relating to the property. Yovette was away from the home when the assault occurred.
Defendant testified that he was in the front yard with Harvey Green when Charles Green approached and asked about the missing doorknob. According to defendant, when he informed Charles Green that he would not fix the door, Green became enraged and told him he would make him fix the door. Defendant stated that he asked Green if he wanted to fight merely to clarify what Green meant by saying he would make defendant fix the door.
Defendant stated that Charles Green dropped some items and then took one step towards him, moving his hand forward. Defendant swung at Charles Green, knocking him to the ground, simultaneously knocking Harvey Green out of the way. Defendant admitted that he hit Charles Green several more times. Defendant stated that he attempted to run away twice, but Charles Green grabbed his leg each time, so defendant kicked him three times. Defendant claimed that there was a bulge in Charles Green's pocket and that Green tried several times to reach in the pocket. He thought it might be a gun, so he removed it, found that it was a phone, and threw it to the ground. Charles Green grabbed defendant's leg a last time and also bit him in the back of the thigh, so defendant pushed his head into the fire hydrant.
Defendant stated that earlier that year prior to the incident, he had an argument with Green about Green's request to be reimbursed for mousetraps that he bought. He also stated that he feared Green had a gun because on the previous New Year's Eve, someone fired gunshots into the side of his house. Defendant also voiced his opinion that he believed the victim to be a drug dealer.
Based upon the above evidence, the trial court found the defendant guilty of felonious assault and sentenced him to three years in prison.
This timely appeal ensued.
We will address defendant's two assignments of error together as they are interrelated.
 I. THE VERDICT IS AGAINST THE WEIGHT OF THE EVIDENCE.
 II. THE EVIDENCE IS CONSTITUTIONALLY INSUFFICIENT TO SUSTAIN A CONVICTION OF FELONIOUS ASSAULT IN VIOLATION OF R.C. S2903.11.
Defendant argues that his conviction for felonious assault was against the manifest weight of the evidence and not supported by sufficient evidence as he clearly acted in self defense.
The standard of review we must observe in passing on sufficiency of the evidence and manifest weight of the evidence issues were set forth by the Supreme Court of Ohio as follows in State v. Thompkins (1997), 78 Ohio St.3d 380, 386-87:
 The state asserts that sufficiency of the evidence and weight of the evidence are synonymous legal concepts. They are not. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. With respect to sufficiency of the evidence, `sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy.
 Whether the evidence is legally sufficient to sustain a verdict, is a question of law.
 State v. Robinson (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.
 Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief. (Emphasis added.) Black's supra, at 1594.
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721
(The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.).
We find no evidence that there was a miscarriage of justice or that the trial court lost its way in reaching its verdict. The so-called evidence in support of the self-defense claim was severely compromised by the testimony of Harvey Green, who was an independent witness.
The elements of self-defense are as follows:
 In Ohio, the affirmative defense of self-defense has three elements: (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bone fide belief that [he] was in imminent danger of death or great bodily harm and that [his] only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid danger.
State v. Thomas (1997), 77 Ohio St.3d 323,326. If the defendant fails to prove any of these elements by the preponderance of the evidence he has failed to demonstrate that he acted in self-defense. State v. Jackson (1986), 22 Ohio St.3d 281, 284.
In considering whether the trier of fact lost its way in finding that defendant did not prove self-defense, the testimony of Harvey Green is compelling. Harvey Green freely admitted his fondness and admiration for defendant and went so far as to tell Det. Quinn that he did not want to be involved because he liked defendant. However, in spite of Harvey Green's admitted bias in defendant's favor, his testimony established that not only was defendant at fault in starting the affray, but that he used brutal and unrelenting force in continuing the assault on a vulnerable victim.
The evidence presented at trial established that defendant, not Charles Green, started the assault. Although defendant referred to the incident as a fight, both Harvey Green and Charles Green established that the attack was a one-sided assault of horrifying proportions. Harvey Green testified that defendant asked the victim if he wanted to fight and then sucker-punched him in the head as he bent down. Much later in the attack, Harvey Green tried to pull defendant away because he feared that he would kill Charles Green and defendant threw Harvey Green off. Harvey Green's testimony corroborated that of Charles Green, who stated that he was hit in the head as he bent over to put a box on the ground, and was knocked unconscious. Harvey Green, who watched the entire incident, concurred that Charles Green never got up from the ground, nor did he strike, attempt to strike or ever threaten defendant. Despite the victim's helpless condition, while Charles Green lay unconscious on the ground, defendant repeatedly punched and kicked him, finally grabbing his head and smashing it into a fire hydrant. The attack was so severe that defendant's own friend tried to pull him off of the victim. Rather than walk away from the unconscious and bleeding Charles Green, defendant threw the elderly Harvey Green off and continued the merciless beating.
In addition to proving that he did not start the affray, defendant was required to show that he believed that he faced imminent danger of death or great bodily harm and the only means of escape was the use of such force. The evidence established that there was no reasonable basis for such a belief.
The defendant contended that the victim was reaching for a bulge in the victim's pocket which defendant thought was a gun. He claimed when he later pulled the object out, he discovered it was a cellular phone. This testimony was contradicted by Harold Green who testified that the cellular phone was lying on top of the items in the box that the victim was carrying. Furthermore, although Harold Green was initially scared that the victim might have had a gun, and although defendant believed that the victim may have had a gun due to defendant's suspicions that he was a drug dealer, the victim made no overt act or threats that would indicate that he had a gun. See State v. Rogers (1975), 43 Ohio St.2d 28, 30-31 (* * * the doctrine of self-defense has no application in this case because the record is devoid of evidence that appellant, out of concern for his safety, intended to shoot the decedent * * * or that the decedent committed an overt act by which appellant could reasonably, and in good faith, believe that he was in imminent danger of death or great bodily harm * * *).
The trial court did not err in finding that defendant failed to prove self defense by a preponderance of the evidence. On this record, the evidence was clearly sufficient to establish the offense of felonious assault. Furthermore, it cannot be said that the conviction was against the manifest weight of the evidence.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _________________________ JAMES M. PORTER, J.
KARPINSKI, P.J., and KILBANE, J., CONCUR.